HYGIENIC FLEECED UNDERWEAR CO. v. WAY.

(Circuit Court, E. D. Pennsylvania. November 26, 1904.)

No. 29.

1. UNFAIR COMPETITION—PATENTEE AND IMPLIED LICENSEE—RIGHT TO USE OF NAME.

Defendant Way, while manager of a knitting company, invented an improved muffler, which he patented. He did not transfer the patent, but the company entered on the manufacture of the article under the license implied from his connection with it when the invention was made, and sold it under the name of "Way's Mufflet"; also registering the word "Mufflet" as a trade-mark. Defendant left the employ of the company, which subsequently transferred its business and property to complainant. Defendant commenced the manufacture and sale of the article under the name of the Way Muffler Company, marking each article with the name "Way's Muffler" and the date of his patent. He also adopted a box having a characteristic design on the cover. Complainant continued the manufacture of the article, selling it under the

---

¶ 1. Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper, 30 C. C. A. 376.

name "Way's Mufflet," and marking it with the date of the patent, and also closely imitated the design and reading matter on defendant's box lid, and copied new styles of the article devised by defendant, and his numbers designating the same. *Held*, that defendant, as the patentee, had the right to use his name, as well as the descriptive word "muffler," to designate his manufacture; that complainant acquired no right to either, or to mark its goods as patented; and that its use of such designations and imitation of defendant's packages and designs constituted unfair competition.

In Equity. Suit to restrain unfair competition and use of trade-name.

W. P. Preble, Jr., for complainant.
Henry N. Paul, Jr., and Joseph C. Fraley, for respondent.

J. B. McPHERSON, District Judge. This bill and cross-bill raise questions concerning unfair competition and the use of trade-names. There is very little dispute about the facts, and in the following statement I have therefore used freely the language of the brief prepared by defendant's counsel, with such additions and changes as seemed to me to be desirable:

Since 1881 John Howard Way, the defendant, has been engaged in the manufacture of knitted underwear in the city of Philadelphia. In 1887 the business, which was then conducted under the name of J. H. Way & Bro., fell into difficulties, and was taken over by a limited partnership association called the Way Manufacturing Company, Limited, having a capital divided into 1,000 shares. Way was superintendent under this partnership at a salary, and was also given 10 shares of its stock as a gratuity. In its turn, the partnership failed in 1894, whereupon John and James Dobson, woolen merchants and carpet manufacturers in Philadelphia, who were its largest creditors, gained control of the business in the following manner: James Dobson and Way were appointed assignees of the partnership. In November, 1895, a charter was obtained for a corporation called the Way Manufacturing Company, with a nominal capital of $50,000. At the assignees' sale the assets of the partnership were bought in for the Dobsons, who found the money to pay for them, and were thereupon transferred to the new corporation. Way agreed that his name might be used in the corporate title, and that he would become the manager of the business at a salary, and in consideration of this agreement the Dobsons promised to give him a 40 per cent. interest in the capital stock. No stock was ever issued, however, perhaps for the reason that the Dobsons did not wish their interest in the enterprise to appear. The underwear, sweaters, and other knit goods manufactured by the corporation were marked with the name of the Way Manufacturing Company, but the possessive word "Way's" was never applied to them, either as a trade-name or otherwise.

On September 3, 1897, the defendant, who was still manager of the Way Manufacturing Company, invented the improved muffler with which this suit is concerned, and immediately patented the article in his own name. No agreement was ever made modifying his complete ownership of the patent, but he at once communicated to the Dobsons the fact that he had made the invention; and the Way Manufacturing

Company, under the implied license that arose from the fact that he had made the invention while in their employ, put the article on the market immediately, and with some success. The company never asked Way to assign the patent, and never paid him any money as part of an agreement to buy it, either express or implied. The solicitor's bill for procuring the patent, amounting to about $100, with sundry other items, was charged to, and was paid by, the Way Manufacturing Company; but this was probably because the company was making the article, and expected to profit by the protection of the patent. While Way remained the manager of the company, he granted no license to any one else to sell the article, and allowed his name to be used by the company in several suits brought to restrain infringement. The infringing article in these suits, which was called by the maker the "Klondike Collarette," was different in appearance and structure from the article made by the Way Manufacturing Company, and infringed the first and third claims of the patent only. These claims were declared void for lack of patentable invention, but the second claim of the patent has never been passed upon, and for the purposes of this suit must be regarded as valid. Although the litigation on these two claims terminated unfavorably to the defendant, the public has apparently acquiesced in the validity of the remaining claim.

From the beginning of its manufacture, the patented article was called "Way's Mufflet." The defendant testified that it had been immediately recognized that the new article must have a name, and that the name "sweaterette" had been considered for a few days; but "Way's Mufflet" was finally decided upon, which he declares "was meant to signify that it was mine, and no one else's." In marking the goods this possessive name was always put close to the date of the patent, thus: "Way's Mufflet, patented Nov. 16, 1897." The word "mufflet" as an arbitrary word was registered in the Patent office as a trade-mark, or trade-name, in November, 1897, by the Way Manufacturing Company. The sale of the muffler during the season of 1897–98 was considerable, but the following season showed a falling off—due, perhaps, to the fact that the extensive street car advertising of the first year was not repeated.

On the 1st of August, 1899, the defendant was discharged by the Way Manufacturing Company from his position as manager, and his claim to have 40 per cent. of the capital stock issued to him was denied. Thereupon he determined to begin immediately to manufacture the article for which he owned the patent. Believing that he also owned the registered trade-mark, his first intention was to call the article of his manufacture by the name it had always borne—"Way's Mufflet." But within a very short time, and before any business had been done, he was advised that the trade-mark was owned by the Way Manufacturing Company; and accordingly he destroyed all the stationery and advertising matter that had been prepared by him containing this name, and thereafter called the article "Way's Muffler," and carried on his business under the name of the Way Muffler Company. Shortly after he began business for himself, the Way Manufacturing Company filed a bill in equity against him in the court of common pleas of Philadelphia county, in which it averred that it was engaged in selling a

knitted chest and neck protector "ordinarily or commonly called a 'muffler,' and sometimes designated in the trade by the arbitrary word 'mufflet.'" It averred an implied license by operation of law under Way's patent, on the ground that he had made the invention while in the company's employ, and set up also its ownership of the registered trade-mark "mufflet." It declared that Way, a person named Jeffries, and Dobson were "the three principal and majority owners of its stock," and asked that the defendant should be restrained from doing business under the name of the Way Muffler Company, or from using either the words "Way's" or "muffler" in his business. To this bill the defendant filed a cross-bill, asserting his right, as the patentee, to sell the patented article under his own name, and asking, as an owner of the capital stock, for an accounting as to the profits of the company. It is suggested by the defendant that the Way Manufacturing Company made a blunder that was soon regretted in setting forth the truth concerning the ownership of the company's capital stock; but, however that may be, instructions were given not long afterwards that no further steps should be taken, and the suit was not pressed. A demurrer to the cross-bill had been filed, but before it was argued the Way Manufacturing Company went out of business, transferring all its property in November, 1900, to the Hygienic Fleeced Underwear Company, the present plaintiff, and Way apparently gave up the effort to get anything out of his interest in the company's stock. The suit against him·having been abandoned, Way proceeded to develop his business with energy and diligence, and as a result it has grown to about ten times the business of the Way Manufacturing Company in the patented article, and amounts to more than a quarter of a million dollars per year. Every muffler put out by him is stamped "Way's Muffler, patented Nov. 16th and 30th, 1897, N. E. cor. 23rd & Arch Sts., Philadelphia." Since the sale to the Hygienic Fleeced Underwear Company, it has continued to manufacture and sell the patented article, marking it with the words: "Way's Mufflet, (Registered Trade-Mark) patented Nov. 16th, 1897; manufactured and owned by Hygienic Fleeced Underwear Co., Inc. Phila."

In September, 1899, immediately after starting in business for himself, the defendant adopted a new and characteristic top, or lid, for the pasteboard boxes used by him. The ground was white, and upon it were printed in dark-blue ink several figures of men and women wearing the muffler, which is indicated by a dotted line pointing to it directly, and by the words, "There it is." The other words on the lid, which are also printed in blue ink, are as follows:

> "A perfect chest and throat protector.
> Don't go on over your head.
> Way's Muffler.
> For men, women and children.
> As easily put on as your hat.
> A sure guarantee against colds."

Some of these words and figures had been previously used by the Way Manufacturing Company in its placards and other advertising devices, but the combination is wholly new. After the defendant adopted this lid, the Hygienic Fleeced Underwear Company began to

use a lid, also of white ground, printed in a slightly lighter shade of blue, but almost identical in appearance. The figures differ somewhat, but each shows the muffler, and several have the dotted line, and the phrase, "That's it." The other words on the lid are these:

> "Way's Mufflet.
> Don't go on over your head.
> Way's Mufflet.
> For men, women and children.
> As easily put on as your hat.
> Way's Mufflet."

There are some differences, as will be observed, but the two lids are so much alike that without careful inspection one might easily be taken for the other.

From time to time the defendant has devised and placed on the market new styles of mufflers. Among these is one put out as 55XX, showing an open-work vertical stripe. Another is 95XX, showing an extra wide horizontal stripe. Another shows a tucked-work dot made by alternating red and black for seven courses for the width of four needles. After the defendant began to make style 55XX, the complainant followed by making a precisely similar muffler with the same vertical open-work stripe, and also called style 55XX. And the same is true of the muffler showing a tucked-work dot of red and black. So, also, after defendant began to make his 95XX, complainant adopted this as a style number for the same kind of muffler.

Upon these facts, I think the legal questions are not hard to solve. The defendant is the owner of a patent whose second claim is presumably valid, under which he is manufacturing a neck and chest protector, commonly known as a muffler. The complainant has no interest in the patent, and no license, express or implied, to manufacture or sell the article. When, therefore, the complainant makes the article and sells it as "Way's," describing it further as patented November 16, 1897, the date of defendant's patent, and declares it to be manufactured and owned by the underwear company, it is asserting, in effect, that it owns the patent, or some interest in the patent, and is manufacturing and selling the article thereunder. Coupled with the palpable imitation of the defendant's box lid, it seems to me that so clear a case of unfair competition is made out that further discussion of the point is needless. So, also, it seems to me to be plain that the defendant has a right to use his own name in describing the article that he invented and patented, and that he has an equally clear right to describe it by using the word that is commonly applied to it. The complainant had acquired no right either in the word "Way," or in the word "muffler" by any independent action of its own. Indeed, no one ever called the article by its descriptive name, "muffler," until the defendant used the word, so that the cases which hold that even a descriptive word may sometimes acquire the properties of a trade-mark have no application to the present controversy. The complainant's predecessor, the Way Manufacturing Company, always sold the article as a "mufflet," and the complainant still sells it by that name; and neither corporation had or has any peculiar right to the word "muffler," used to describe the kind of article that the defendant is offering to the public. When the

word "Way's" began to be used, it was properly employed to indicate that Way was the inventor, and moreover it was thus employed with his consent, and in connection with the manufacture of the muffler under the implied license which he not only recognized, but allowed to remain an exclusive license. But that license did not pass to the complainant. Hapgood v. Hewitt, 119 U. S. 226, 7 Sup. Ct. 193, 30 L. Ed. 369. It ceased when the Way Manufacturing Company sold its property and business, and thereafter Way had the exclusive right to use his own name in describing the article manufactured under his own patent. The imitation of the defendant's box lid is scarcely denied, and, indeed, denial would be ineffectual.

A decree may be drawn dismissing the complainant's bill, and substantially granting the relief asked for in the cross-bill, namely, restraining the complainant from the use of the word "Way" or "Way's," and from marking its goods patented, or patented as of the date of the defendant's patent, or indicating that it has any ownership in the patent, and from the unfair use of a box lid similar to the defendant's.